This is actually our last case of the day. This is case number 417-0244, Salvatore v. Cleaver-Brooks. For the appellant is Attorney Corwin and for the athlete Attorney Tollard. Alright Mr. Corwin you may proceed. My name is Chip Corwin and I represent the plaintiff's appellants, in this case Larry and Marsha Salvatore. The stay on this case should be lifted for three reasons. First, the underlying appeal is a sham, it's a ploy. Second, the stay jeopardizes the plaintiff's case. And third, the contempt order is by definition a final judgment collateral to and independent of the underlying case. First, the underlying appeal is a sham. This court in Con 3 looked at whether a case should be stayed while an issue in the case is an interlocutory appeal. And the Con Court, 4th District, citing two other 4th District cases, Wiseman and Shaw, said that if the interlocutory appeal is a ploy or a sham, then the underlying case should not be stayed. Now the ploy contemplated in Wiseman and Shaw was a ploy to keep race judicata at bay, avoid a ruling from one tribunal taking effect in another tribunal. The ploy here is a little different. The ploy here was to keep trial at bay during Larry's lifetime, to avoid trial while Larry was still alive. Now, Cleaver Brooks isn't admitting that their appeal is a ploy or a sham, so how do we know that it's a ploy or a sham? We look at the context and we look at the timeline of events surrounding Cleaver Brooks' decision to appeal. That's what this court did in a very recent case called Pedigo v. Youngblood. That case, a McLean County case, involved a defendant appellant named Youngblood who agreed to follow the trial court order and then later changed his mind, refused to follow the court order, and was found in friendly contempt and appealed to this court. And this court not only ruled against Youngblood on the issue of the discovery order, the court sanctioned Youngblood and said that Youngblood could not have filed his appeal in good faith because, quote, And if you look at the facts of this case, it's virtually the exact same scenario. If anything, Cleaver Brooks' conduct is worse. I know the court is familiar with the facts, but the important ones are that Cleaver Brooks offered to produce these index cards in Milwaukee back in December. Plaintiff said, took them up on the offer, said, yeah, we'll come to Milwaukee and inspect the cards. And there's some issue in the case of production versus inspection that really doesn't matter. They produce them, we inspect them, it's the same thing. So we said, yeah, we'll come up there and we'll look at the cards that you produce. And then Cleaver Brooks said, well, before you come, we want you to sign this inspection protocol, setting out all these onerous terms that we would have to follow for this production. And the reason set forth in the briefs, we declined to sign that inspection protocol. We declined to agree to it. So Cleaver Brooks said, okay, well, then we're going to have to litigate this. So they filed a motion for a protective order, and that motion was served January 12th of 2017. That was the hearing that set out the terms of the production. At that hearing, and it's important to note that Cleaver Brooks is now in their underlying appeal as claiming that the index cards aren't relevant. Cleaver Brooks never made that argument on January 12th. The argument Cleaver Brooks made was that the cards are trade secrets and should be subject to a confidentiality agreement. During that hearing on January 12th, the trial court stopped Cleaver Brooks' attorney and said, I'm paraphrasing, but the direct quote is in the briefs, said, just so I understand, plaintiffs aren't going to get all 90,000 cards. What they're going to do is going to look through the cards, have the ones they feel are relevant, and then those will be copied. And in response to that question from the court, Cleaver Brooks' attorney said, correct, your honor. Cleaver Brooks lost its trade secret argument that day. An order was drafted, which Cleaver Brooks agreed to, which set out the terms of the inspection or the production. The only surviving terms from the inspection protocol were that plaintiffs would keep the cards in order, weren't going to go in there and start throwing them all around or anything. We weren't going to take pictures, but we would be able to take notes, and we would be able to have our cell phones in the conference room. Those were the terms of the production. The next day, Cleaver Brooks sent an email to an attorney at my law firm saying, bring your own post-it notes for the production. Obviously anticipating that we'd be going through and tabbing over two days hundreds, if not thousands, of these cards. That was the whole point of being there. Well, as we now know, that's why we're here, Cleaver Brooks never produced the photocopies of the cards. They later claimed when the trial was bearing down and Larry was still alive, Larry had terminal mesothelioma, that the cards weren't relevant. But they never made that argument prior to the production. They never said that to the court. They never sought relief on that point. When the court asked them, my understanding is the plaintiffs are going to be tabbing these cards and those will be photocopied. In other words, they'll be given to the plaintiff afterwards. Counsel for Cleaver Brooks said, correct, Your Honor. The facts here are just like in Padigal v. Youngblood, where this court said, a party cannot claim that they have a good faith reason, well-grounded in fact, for failing to do something, failing to comply with the court order that they agreed to follow. Well, here, Cleaver Brooks did comply with the court order. The inspection, the production took place. All we're doing is waiting for the photocopies of cards that have already been produced, that we've already looked at, we've already read. They're just withholding the photocopies. The photocopies of the ones you tabbed. Right. That's sold at $5,000, right? It is. It's $5,077, according to. We didn't count with Cleaver Brooks' balance, and I take them at the word that it's $5,077. So what does Cleaver Brooks say in response to this argument? They say, well, it's the plaintiff's own fault. It was the plaintiff's choice. If the plaintiffs had just agreed to our confidentiality order, or if they had not sought to compel the production of the photocopies, none of this would have happened and we could have gone to trial. Well, first of all, and they say this in their brief, they say if plaintiff would have just produced, if plaintiff would have just agreed to the confidentiality order, we would have produced them. They say that in their brief. If that's true, then what does that say about their relevance argument? The cards are relevant. Relevance doesn't depend on whether the cards are confidential or not. So in their brief, in this appeal, they're saying they would have produced them under the confidentiality order. What does that say about the relevance argument? It says to me that the relevance argument doesn't have any merit. Secondly, the choice between going to trial without all the facts, without the index cards, without the ability to ask their corporate representative about the cards, the choice of going to trial without that, or the choice of having the case be brought up on appeal, interlocutory appeal, while your terminally ill client languishes and dies, is not really a choice. It's a false choice. And the Supreme Court, the Illinois Supreme Court, recognized that in a case called Bueller v. Whalen. What happened in that case is Ford Motor Company, it was an auto accident case, Ford Motor Company refused to provide documents. And the plaintiff eventually, the court didn't sanction Ford at the time, and the plaintiff went to trial, and the plaintiff won. But on Ford's appeal, the Illinois Supreme Court said, what should have happened here is Ford should have been defaulted. Because the Illinois Supreme Court said a finding of contempt isn't really a sanction. The worst that happens is a nominal fine. Meanwhile, what happens is the plaintiff is forced into this false choice of going to trial without the documents that are important to its case. Are you saying that's what should have happened here, then? That's what we told the trial court, and that's what we asked for. Exactly how would that work? You say they should have been defaulted. Well, their pleadings should have been struck, and they should have been defaulted. In entirety, not just certain aspects of their defense. Right. Just an outright default. Defaulted. That's what the Supreme Court says should have happened to Ford. And that's what happened in the case Johnson v. Owens Corning, a Fourth District case, that we cited to the trial court. In that case, Owens Corning refused to produce a witness under Rule 237. Meanwhile, they were trying to seek interlocutory review. They were trying to get the case stayed. The McLean County Trial Court rejected all that and said, I'm not going to do that. What we're going to do is we're going to default you under Rule 219. That went up on appeal of the Fourth District, and the Fourth District affirmed. It's Johnson v. Owens Corning. But the relief you're requesting from this court is just that we lift the stay, right? Right. Right now, the appeal that we're here for right now is the stay. But this goes to the fact that the appeal, the underlying appeal was a ploy in the court. That's what confuses me a little bit, because you're arguing there should not have been a stay, and yet you didn't have the materials that you needed to proceed with trial. To me, that seems inconsistent. But I guess your answer is, no, it's consistent because there should have been a default. Right. The inconsistency, as I see it, is that here we have a defendant who's not complying with the court order. Yeah. And instead of the trial court offering relief to the plaintiff, the trial court offered the relief that the defendant asked for. The defendant asked to be held in contempt, precisely because it's not any sort of penalty as described by the Supreme Court. And so what the defendant says, well, it's the plaintiff's own fault for choosing to seek these cards. But our point is that the Supreme Court said that that's not really a choice. The Fifth District said so as well in a case called Zagorski two years ago, or actually last year, when another defendant sought a review of a discovery order under friendly contempt. And the Fifth District said it was irritated and didn't understand why this case was even before it, because friendly contempt shouldn't be used in run-of-the-mill discovery orders. It should be used in unsettled or unique areas of law. What's the status of the other appeal in this case? Yeah, in this matter, let's say it that way. The appellant Cleaver Brooks' brief has been filed and the plaintiff's brief is due tomorrow. Is that an oral? Is that to be orally argued? Yes, it is. So that would be set sometime in the fall? Right. I mean, yeah. Cleaver Brooks asked for the cases to be consolidated. Following up on that, regardless of what this court decides today, will it make any difference based upon the appeal on the merits is going to be later on this year? I think it does make a difference, because that goes to the second point, which is the stay is jeopardizing our case. We can't do anything in this case while it's stayed. There are four defendants left in this case, three of which have nothing to do with these index cards. Chicago Gasket, Burnham Boilers, and John Crean are still in this case. We had a deposition scheduled of Burnham Boilers, corporate representative. Is that something we should know from examining the record? In other words, is that in the record, what you just stated to this court? I believe there is discussion of that when Cleaver Brooks had brought up its motion for a continuance on January 24th. There was discussion of the things that were left to be done in the case. But none of that can be done right now because the case is stayed. And one of our points here on appeal, trying to get the stay lifted, is that it's not judicially efficient to stay the entire case and prohibit us from taking depositions of other defendants that have nothing to do with this issue. What would they have to do with your examination of them? Would you be asking them questions that could potentially relate to the index cards or to the activities of this defendant? No, I don't foresee that happening. Like, Chicago Gaskets is a gasket company. Cleaver Brooks is a boiler company. The index cards are the record of where Cleaver Brooks sold their boilers. They contain information about the boilers that have nothing to do with Chicago Gaskets. This is a couple of other examples. We've had settlements coming in this case prior to the stay. We can't get those approved because of the stay. Larry is dead now. They can't get a spam appointed because of the stay. So the stay is just really unnecessary. Does this court have authority to impart lift the stay, but maybe not as to Cleaver Brooks? I believe it does, yes. I think the court has the authority. The stay is a tantamount to an injunction, and I think the court has the authority to modify the terms of the stay. Justice Turner, you talked about the other appeal. One of the issues here is that this court might not even have subject matter jurisdiction over that other appeal, in which case that appeal should be dismissed and this stay should be lifted. At argument on imposing the stay, plaintiffs argued that the contempt order is a final judgment independent of and collateral to the underlying case. That's what the case law, Silverstein, Lewis v. Family Management, and the trial court explicitly disagreed with that at the urging of the defendant. The trial court said this is not a final judgment. It's a discovery order, and discovery orders are not appealable. So if the court doesn't have jurisdiction over that other appeal, that appeal should be dismissed and the stay in the case should be lifted because the only reason there is a stay is because of that other appeal. Now, the position the plaintiffs took was that it is a final judgment, collateral to the underlying case. Even under those circumstances, the stay should still be lifted because this court in Kahn said if an issue was just collateral to the case, that's the word that the court uses, collateral, then there shouldn't be a stay imposed on the underlying case. And by definition, the contempt order as a final judgment is independent of and collateral to the underlying case. Defendants have argued that the stay is now moot because of Larry's death. The stay is not moot because of Larry's death. The longer the stay is in place, the more likely it becomes that witnesses become unavailable. Evidence becomes available. Documents become unavailable. Larry is, of course, not the only witness in this case. Witnesses, for whatever reason, they move. They get sick. There are accidents. The memory fades. It just becomes harder to prosecute the case and plaintiff is prejudiced. Each day the stay goes on. In the Kahn case, this court said even in cases where the underlying appeal is in good faith even in cases where the issue is significant, the stay should not last forever. It should only be in place for a reasonable amount of time, no matter what. Thank you. Counsel. Let's see, Mr. Pollard. Thank you, Your Honor, and may it please the Court. My name is Michael Pollard. I represent Cleaver Brooks in this case. Just, again, to identify precisely what we're here on. We are here on the stay. This is an interlocutory appeal from a stay. Appeal number 4-170-173 has a tentative, the clerk's office set a tentative oral date of September. We don't have a firm date, but if all the briefing goes as planned, it will be already in September. So, really, what is at stake in this appeal is whether this court should reverse the stay and send this case down so that trial court proceedings can begin in advance of a resolution of the decision of the merits. That's really what is at stake here. Well, if the case was stayed as to your client, do you care about a stay as to the rest of the litigation? Well, there were absolutely no arguments made that it should be not stayed against the other parties. That's an argument that is nowhere found in the record. In fact, that's not even found in the briefs. That just came up on oral argument today. Do you have a position? Yes, it should not. The stay should continue. I mean, nobody else is even here to argue because they're not involved in the appeal. And so, as a result, I think that would be manifestly unfair to the other parties to lift that stay partially because Cleaver Brooks is going to have to participate in all that as well. And, you know, the court... I just also want to put in perspective what really happened. You're talking about an abuse of discretion standard. Deference to the court that no reasonable judge would do what Judge Foley did in this case. First of all, there is not a case in the state of Illinois that counsel has found or that I've found where a stay entered in connection with 304B5 contempt has been entered. Why is that? In fact, I don't think we've even found a case where it's ever been raised. Why? Because 304B5 is one of an arsenal of things that are available to a trial judge when a party refuses to comply. Justice Connacht, you wrote in the Mann's case, 304B5 is there to facilitate the purposes of an appeal. So when a court believes that the issue is better served by an immediate appeal rather than by coercing compliance through 219C because the party's been contumacious or whatever, this is an available tool to the court. In Mann's v. Briel, probably a significant case, you know, not just because Justice Connacht wrote it, but Judge Foley was the contender in that case. She's very familiar with her rights and options and how to handle it. The issue in Mann's v. Briel was, should financial records be produced in a personal injury case to show a defendant's ability to pay? Now, on the merits, it was a two-to-one decision, but nobody questioned at all the notion of the use of 304B5. And while it didn't mention a stay, I mean, stays are as a matter of course. This stay was not issued as a matter of course. Most courts enter a friendly contempt citation, fine a dollar, stay the case. That's been the practice since the first case I ever handled was Jenkins v. Woolworth, Illinois Supreme Court case involving the Medical Studies Act we cited. Court holds my partner in contempt and stays the case to respond to. That's been the practice. Here, the parties had to come back and argue over the stay, and Judge Foley took all the arguments into consideration, and she said, I understand your desire for this man to have an expedited trial set. But I think in this case, we need to resolve this issue, because it's going to be involved in depositions of corporate representatives. There's going to be a Rule 237. You heard counsel say, well, she should have done what was done in Johnson v. Owens, Illinois. You refused to produce something in response to 237. You defaulted. Well, if there's no contumacious disregard, and the issue is legitimate, and here we have Manns v. Breal, we have In Re Asbestos Liability, cases that are going to be at issue in the merits of this appeal, Judge Foley decided that this was an issue that was meritorious. You haven't heard a word that more than 13 of these cards relate to job sites. It's 500 and something. And the inspection, in our view, was, and in fact it's supported in the record, is we limited it to the Salvatore case. So once there was no agreement as to a protective order or no court compulsion regarding a protective order, then you go out there and you review, and the discovery is limited to the Salvatore case. So we say there are 13 cards that are job sites and time periods implicated here, and well over 400 that aren't. Well, we'll test that in the merits of the appeal. And so some of these arguments are addressed to the notion of, well, the contempt is wrong. That's not at issue here. In fact, that's not even at issue in the merits appeal. We filed a notice of appeal on the contempt, which calls into question the discovery order. They filed a motion to reconsider saying, oh, you should have defaulted. They never cross-appealed in that other appeal, as you will see when you get there. There's no way to cite this contempt citation in this appeal. This is an interlocutory order, and that's all that's at issue. And it calls for great deference. The other thing about this order is, so it's done by a judge familiar with the process. It was done deliberatively by the judge, as is often the case in practice in friendly contempt orders. The judge signals his or her intention to do this and elicits a party's reaction. Here, Judge Foley did that on multiple occasions. Plaintiffs were, she basically was signaling them this is within the realm of consideration. What do you want to do? Do you want that expedited trial date on the 13 cards, or do you want to stick to your position and I'm going to do this? They, for whatever strategic reasons they had, chose to pursue the discovery request. And then as shortly as night follows day, the contempt citation is issued, and we then move for the stay, which she considers at great length and says the factors are in favor of it. The notion of final versus whatever. That used to be an issue in Illinois until 1993, whether a contempt citation was a final order. And then in 1993, the Illinois Supreme Court, pursuant to its constitutional authority, enacted Rule 304b-5, which authorizes appeals from contempt citations that do two things. You have to have two things. You have to find a person or entity in contempt of court, and you have to assess a monetary or other penalty. Both of those things were done here. 304b-5 was, there was an entity held in contempt of court, a monetary fine imposed. 304b-5 was complied with to the letter. With respect to some of the other cases that counsel is talking about, to show that the appeal is a sham, cites the case of Kahn versus BDO-Sideman, a 2012 decision of this court. All these, in Kahn, this court affirmed a stay pending appeal in the Illinois Supreme Court of a statute of limitations issue for the Illinois Supreme Court. It reversed a stay awaiting an arbitration. And part of the reason it reversed the stay pending the arbitration is the case had been before this court. And this court said, well, based on our ruling, we just said the breach of contract case to arbitration. There can't be much of a breach of contract case left. Therefore, the stay is wrong. So the court was basically interpreting its own ruling. Just like Judge Foley here thinks this is an appealable issue, she ruled against us, but it potentially has some merit, and it's going to facilitate and expedite the rest of the case. Without it, the trial is going to be greatly complicated. So Kahn, it also didn't involve a contempt citation, obviously. The Youngblood case, that's a decision of this panel in 2015, that dismissed a contempt appeal under 304b-5 because the penalty that was imposed was reasonable attorney's fees, which had not yet been reduced to a number. And so as a result, there wasn't a monetary penalty yet, and so it dismissed. So that was because of noncompliance with 304b-5. Buehler v. Whelan, the Supreme Court considered that case on the merits of the jury's verdict. It talked about how parties shouldn't mess around in discovery. It doesn't support anything. This, Your Honor, this case would be the first case in a little while where a stay entered into a properly executed 304b-5 contempt citation has been reversed. And on this record, where the judge held a separate hearing, the judge repeatedly signaled her intention, and the judge was manifestly familiar with her options, would be, I think, a gross miscarriage of justice, and it would be improper to find the judge fully at the user's discretion in this case. Unless the court has any other questions. I don't see any. Thank you. Thank you, counsel. Mr. Corwin, any rebuttal? Yes, Your Honor. Counsel says that the 304b-5 is an available tool to the trial court. That's true, but it's not the only available tool, and that's what the appellate court, this court, the Fifth District, and the Illinois Supreme Court have been trying to tell trial courts for some time now. You have to look at the context of the situation. You have to look at what the contender has done. Is it a unique and unsettled area of law? Is there a plaintiff who's dying, and his trial is a week away, when the appellant or the contender all of a sudden, out of nowhere, decides that they're going to dispute the relevance of cards, of documents, that they've already produced pursuant to a court order? Counsel mentions Mans v. Briel and how that was considering financial records, whether those should be produced. Here's the key difference. The financial records weren't already produced when that issue went up on appeal. Here, the records were already produced to plaintiffs at our own expense in Milwaukee over two days at the invitation of the defendant, to the understanding of the defendant, to the understanding of the court of exactly what was going to happen. Notice there was no argument from the Cleaver-Brooks that they ever stated that they ever reserved or preserved any right to inspect the cards for relevance after we'd already inspected them, after they'd already produced them to us. There has been no case ever where a defendant or a party has produced records to another party pursuant to a court order, and then a week before trial says, we're not going to produce the photocopies of these like we told you we would, like we told the court we would, because we want to be held in friendly contempt so we can get this case out of the trial court and into this court. And that's why that fact is important, because if this court in Kahn and Wiseman and Shaw said if the appeal is a ploy, then there should not be a stay. Cleaver-Brooks has been rewarded enough at this point for its misconduct. It shouldn't be further rewarded. So counsel says its contempt is not at issue. That's wrong. It is at issue. It is at issue precisely because this court said that if the appeal is a ploy, then there shouldn't be a stay. Counsel for Cleaver-Brooks dismissed the Buehler case, the Illinois Supreme Court case. He said, well, their case said that they shouldn't mess around in discovery. That's right. Parties shouldn't do that. If you look at the facts of this case, that's exactly what Cleaver-Brooks did. They invited us up to Milwaukee. We looked at the cards. We tabbed the ones we wanted copied. When they were asked by the court whether we would receive photocopies, counsel for Cleaver-Brooks said, correct, your honor. And then a week before trial, they changed their minds. According to this court in Youngblood, that is not in good faith. For those reasons, the stay should be lifted and the plaintiff should be allowed to prosecute this case. Thank you. Thank you, counsel. I call the matter under advisement and be in recess.